IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| E&C SHANGHAI INC., a/k/a SHANGHAI YIKE INTERNATIONAL LOGISTICS CO., LTD. | § § § § | |
| v. | § § | CIVIL ACTION NO. |
| GOOD SPORTSMAN MARKETING, L.L.C. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW Plaintiff E&C Shanghai Inc., also known as Shanghai Yike International Logistics Co., Ltd., and, for its Original Complaint against Defendant Good Sportsman Marketing, L.L.C., alleges as follows:

**I. PARTIES**

1.1   Plaintiff E&C Shanghai Inc., also known as Shanghai Yike International Logistics Co., Ltd. ("Plaintiff" or "E&C"), is an entity duly formed, organized and existing under and by virtue of the laws of the state of China with a principal place of business in Shanghai, People's Republic of China.

1.2   Defendant Good Sportsman Marketing, L.L.C. ("Defendant" or "GSM"), is a limited liability company duly formed, organized and existing under and by virtue of the laws of the state of Delaware with a principal place of business in Grand Prairie, Texas, doing business in the Southern District of Texas for the purpose of accumulating monetary profit. This Defendant may be served with process through its registered agent, Alex Castro, 5250 Frye Road, Irving, Texas 75061.

1

## II. JURISDICTION AND VENUE

2.1     This Court has jurisdiction over Defendant because of its presence in Texas, and because of the continuous and systematic business it does in Texas.

2.2     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff, a citizen of a foreign country and Defendant, a citizen of the states of Delaware and Michigan by virtue of its sole member's place of incorporation and principal place of business, respectively.

2.3     Alternatively, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333(1) for the unjust enrichment claims arising out of nonpayment of ocean freight.

2.4     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the goods being shipped into the United States arrived in and passed through this District.

## III. FACTS GIVING RISE TO LIABILITY

3.1     Plaintiff, acting as a NVOCC, also provided freight forwarding and customs brokerage services to GSM for goods purchased by GSM, or imported into the United States on its behalf, from approximately August 25, 2021, through May 28, 2022.

3.2     During the relevant time, and for the direct benefit of GSM, Plaintiff was responsible for gathering, packaging, and arranging transportation and ocean carriage, either freight collect from, or freight prepaid by, GSM, of over 220 containers of goods to

be shipped from China into the United States, including making the required U.S. Customs declarations and clearances, all at GSM's instruction and direction.

    3.3    Before the start of their relationship, GSM was having difficulties moving containers of its goods from China into the United States. E&C did not have those difficulties and agreed to assist GSM.  GSM knew E&C would advance the fees and costs required to perform these services, including payment of freight, duty and other customs charges, not as delivered duty paid, but instead as a service to GSM which GSM agreed to pay Plaintiff for. However, after it received its goods, GSM failed and refused to pay a substantial part of invoices for the services E&C provided to GSM, and to pay E&C for funds advanced by E&C for GSM's benefit.

    3.4    E&C's services were memorialized in a Logistics Services Agreement ("Agreement") delivered to GSM and its agents on or about August 21, 2021.

    3.5    Under the Agreement, GSM entrusted E&C to handle all cargo space reservation, customs declaration, customs clearance, delivery, and other services required for the international shipment of GSM's goods from China into the United States, including shipping consultation and tracking services. After GSM's goods were delivered, E&C invoiced GSM for all fees and costs incurred, and GSM agreed to pay invoiced charges within 30 days after final delivery unless it challenged the invoices within seven days of receipt, which it did not do. If GSM failed to pay invoices when due, interest would accrue on outstanding amounts at the rate of 0.05% per day.

3.6     On or about September 16, 2021, a GSM Vice President signed a "Customs Power of Attorney and Acknowledgement of Terms and Conditions of Services" between GSM and E&C (the "POA"), which allowed authorized agents of E&C to perform services for GSM under the POA. GSM or its authorized agent also gave specific instructions to E&C on importation of goods on GSM's behalf as a known principal.

3.7     E&C provided its services to GSM in connection with the movement of goods by ocean carriage under separate bills of lading.

3.8     E&C advanced the costs incurred or charged by third-party vendors and other service providers, including ocean and overland shipping companies and carriers, and storage providers, not as part of delivery duty paid, but as a service to GSM for which payment was agreed.

3.9     E&C also engaged and specifically authorized E&C Global as its U.S.-based agent, to perform services for or on behalf of GSM in advance of and once its goods arrived in the United States, including, but not limited to, coordinating entries and deliveries with GSM. This included substantial coordination of overland transportation services to finally deliver imported goods to GSM-designated facilities or storage areas.

3.10    E&C is owed sums advanced and paid for ocean freight, duty, overland freight, other fees and costs, container storage, and interest.

3.11    E&C duly invoiced GSM for the services provided, although transmission of certain invoices was delayed during the extreme and long-term lockdowns affecting

Shanghai during the height of the COVID pandemic when E&C employees could not leave their homes. Once lockdowns were lifted, invoices were sent.

  3.12 On September 13, 2021, E&C invoiced GSM, through its agent, for services provided between August 25, 2021, and September 13, 2021. GSM failed to make payments.

  3.13 In April 2022, E&C invoiced GSM either directly or through its agent for all services provided between September 13, 2021, and April 2022. GSM failed to make payments.

  3.14 On July 4, 2022, E&C invoiced GSM either directly or through its agent for all services provided to date. The invoices covered all services provided between August 25, 2021, and May 28, 2022, for the total amount of $5,051,093.69.

  3.15 Despite repeated demand for payment, GSM has failed and refused to pay all amounts justly owed to E&C.

  3.16 GSM has made offers to pay, but other than making one payment of $300,000, has not paid either what it has offered, or what is justly owed.

  3.17 Payment for the just amount owed by GSM to Plaintiff has not been tendered as of the date of the filing of this Complaint. Allowing for all offsets and payments, E&C is owed at least $4,751,093.69, exclusive of interest, costs and attorneys' fees, which remains due and owing.

3.18    E&C and GSM entered into Tolling and Standstill Agreements from February 21, 2023, through August 22, 2023, related to the claims asserted.  E&C has not waived its claims and now brings its claims against GSM.

## IV. CAUSES OF ACTION

A.    **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

4.1    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 3.1 through 3.18 of this Complaint as if fully set forth herein.

4.2    E&C and GSM have a valid and enforceable agreement for E&C's provision of services as alleged, and for GSM to pay for those services on delivery of GSM's goods.

4.3    E&C performed all of its obligations under the agreement, but GSM has not performed, despite repeated demand.

4.4    GSM materially breached its agreements with E&C when it failed and refused to pay invoiced charges due for services rendered by agreement, knowing that E&C advanced substantial sums of money to move GSM's goods into the United States, and deliver those to GSM, all at its explicit direction.

4.5    E&C performed all its obligations, but GSM has otherwise breached the agreement by failing to pay E&C the amounts justly owed.

4.6    Plaintiff has suffered damages because of GSM's breach and is entitled to recover its damages sustained because of GSM's breach, including interest by agreement or at law, and its reasonable attorneys' fees.

B. **SECOND CAUSE OF ACTION – SUIT ON OPEN ACCOUNT**

4.7  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 3.1 through 3.18 of this Complaint of this Complaint as if fully set forth herein.

4.8  Plaintiff's services to GSM were provided on an open account. GSM accepted the services and became bound to pay Plaintiff the freight and other charges incurred and advanced, which were reasonable and customary for such services. Plaintiff kept a systematic record of GSM's charges on the account, totaling $5,051,093.69. The account represents the record of the series of transactions Plaintiff keeps in the ordinary course of its business, and documents the service provided, with dates and amounts.

4.9  GSM agreed to pay E&C within thirty days after the goods were delivered to E&C, but it failed to do so.

4.10  E&C's claim on account is just and true, it is due, and all lawful and just offsets, payments, and credits have been allowed, leaving $4,751,093.69 due and payable, exclusive of interest, costs, and attorneys' fees.

C. **THIRD CAUSE OF ACTION – QUANTUM MERUIT**

4.11  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 3.1 through 3.18 of this Complaint as if fully set forth herein.

4.12  Between August 25, 2021, and May 28, 2022, E&C provided GSM with services required to import substantial quantities of GSM's goods into the United States for the direct benefit of GSM. GSM received the benefit of these services but has failed

7

and refused to pay the charges due for them. Therefore, Plaintiff is entitled to payment of the fair value of these services, equal to at least $4,751,093.69, exclusive of interest, costs, and attorneys' fees.

### D. FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT

4.13   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 3.1 through 3.18 of this Complaint as if fully set forth herein.

4.14   E&C rendered valuable services, including incurring substantial charges to move GSM's freight by ocean carriage, to or for the direct benefit of GSM, which accepted those services and benefitted from them.

4.15   GSM knew E&C expected to be paid because GSM agreed to pay for these services, agreed to ocean freight collect before shipment, or agreed to freight prepaid, and because it received invoices from E&C directly or through its agent for the services provided. GSM acknowledged E&C's rendered services by GSM's payment of $300,000 on September 16, 2022.

4.16   It would be unjust if GSM was allowed to receive the benefit of E&C's services, but not compensate E&C for the remainder of its valuable services.

## V. DAMAGES

5.1   As a result of Defendant's breaches and failure to pay by agreement, or on open account, Plaintiff has suffered a loss of at least $4,751,093.69, exclusive of interest, costs, and attorneys' fees. GSM owes this amount according to agreement, or in equity and good conscience.

## VI. ATTORNEY'S FEES

6.1     In addition to the its damages, Plaintiff is entitled to recover statutory attorney's fees as allowed by section 38.001 of the Texas Civil Practice and Remedies Code, as well as Texas state law, and/or other applicable law.

WHEREFORE, Plaintiff E&C Shanghai Inc., also known as Shanghai Yike International Logistics Co., Ltd., prays for judgment against Defendant Good Sportsman Marketing, L.L.C., in the amount of at least $4,751,093.69, or an amount to be determined at trial, together with reasonable and necessary attorney's fees, plus interest at the contractual or legal rate until paid, and all costs of Court.  Plaintiff prays for all such further relief, both general and special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/ David S. Toy*
David S. Toy
SBN 24048029 / SDTX ID 588699
DAVID TOY LAW FIRM
4309 Yoakum Boulevard, Suite 2050
Houston, TX 77002
david.toy@davidtoylaw.com
(T) 713 322 7911

OF COUNSEL:

Annie Lau
Texas Bar No. 24057723
alau@fisherphillips.com
Joel Moon
California Bar No. 290470 (*pro hac vice* to be filed)
jmoon@fisherphillips.com
Xiaochen Chen
xchen@fisherphillips.com
California Bar No. 347895 (*pro hac vice* to be filed)
Fisher & Phillips LLP
444 South Flower Street | Suite 1500
Los Angeles, CA 90071
(T) 213-330-4490

***Attorneys for Plaintiff,***
***E&C Shanghai, Inc., a/k/a***
***Shanghai Yike International Logistics Co., Ltd.***